**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

---

**In re: CCA Recordings 2255 Litigation**,
                        **Petitioners,**

**v.**                               **Case No. 19-cv-2491-JAR**

                               **(This Document Relates to Case No. 16-20003-DDC-1, *United States v. Ashawntus S. McCambry*, and Case No. 19-2394-JAR, *Ashawntus S. McCambry v. United States*)**

**United States of America.**
                        **Respondent.**

---

## MEMORANDUM AND ORDER

Petitioner Ashawntus McCambry filed a Motion to Vacate and Discharge with Prejudice under 28 U.S.C. § 2255 (Doc. 38).[1] Petitioner claims that the government violated the Sixth Amendment by intentionally and unjustifiably becoming privy to his attorney-client communications, and asks the Court to reject the government's request to dismiss this action on procedural grounds and find that he has made a sufficient showing to warrant an evidentiary hearing. As a remedy, he asks the Court to vacate his judgment with prejudice to refiling or, alternatively, to reduce his custodial sentence by approximately 50% and vacate his term of supervised release. This matter is before the Court on Petitioner's Motion for Leave to Amend his § 2255 motion.[2] The matter is fully briefed, and the Court is prepared to rule. For the

---

[1] Unless otherwise specified, citations prefaced with "Doc." refer to filings and docket entries in the underlying criminal case, No. 16-20003-DDC-1. Citations prefaced with "*CCA Rec. Lit.* Doc." Refer to filings and entries in this consolidated Master case, No. 19-cv-2491-JAR-JPO. With the exception of *United States v. Carter*, Case No. 16-20032-JAR, Doc. 758 (D. Kan. Aug. 13, 2019) ("*Black* Order"), citations to filings in Case No. 16-20032-JAR are prefaced with "*Black*, Doc."

[2] *CCA Rec. Lit.*, Doc. 877.

reasons explained below, the Court grants Petitioner leave to amend, and denies his § 2255 motion, as amended, without an evidentiary hearing.  Petitioner is also denied a certificate of appealability.

## I.      Background

### A.      Procedural History

Petitioner was charged in an Indictment with possession with the intent to distribute crack cocaine (Count 1); possession with intent to distribute marijuana (Count 2); possession and discharge of a firearm in relation to a drug-trafficking crime (Count 3); and possession of a firearm after being convicted of a felony offense (Count 4).[3]  Count 3 carried a mandatory term of ten years' imprisonment, consecutive to any other count of conviction because it charged Petitioner with discharging a firearm.[4]

On May 31, 2016, Petitioner was charged by Superseding Information with possession of a firearm in furtherance of a drug trafficking crime (Count 1); and being a felon in possession of a firearm (Count 2).[5]  As charged, Count 1 carried a five-year mandatory term instead of a mandatory ten-year term because it did not charge that Petitioner discharged the firearm as did Count 3 of the original Indictment.[6]

On May 31, 2016, Petitioner entered into a written binding plea agreement pursuant to Fed. R. Crim. P. 11(c)(1)(C), and pleaded guilty to Count 1 and Count 2 of the Superseding Information.[7]  Pursuant to this agreement, the parties jointly recommended that the court

---

[3] Doc. 10.

[4] *See* 18 U.S.C. § 924(c)(1)(A)(iii).

[5] Doc. 23.

[6] *See* 18 U.S.C. § 924(c)(1)(A)(i).

[7] Doc. 26.

sentence Petitioner to a total sentence 60 months' imprisonment on Count 1 and 46 months' imprisonment on Count 2, to run consecutively, for a total sentence of 106 months.[8]  As part of the agreement, the government agreed to dismiss remaining counts of the Indictment and to not file any additional charges arising out of the facts forming the basis of the Superseding Information.[9]

Based on a total offense level of 17 and a criminal history category of IV, the Presentence Investigation Report ("PSIR") calculated Petitioner's applicable Guideline range at 37 to 46 months' imprisonment on Count 2 and a mandatory 60-month sentence on Count 1, to run consecutively.[10]  The government did not file any objections to the PSIR or a sentencing memorandum prior to the sentencing hearing.  On November 2, 2016, Judge Carlos Murguia adopted the PSIR's sentencing calculations.[11]  The court accepted the parties' recommendation in the plea agreement and sentenced Petitioner to 60 months' imprisonment on Count 1 and 46 months' imprisonment on Count 2, for a total of 106 months' imprisonment, followed by three years of supervised release.[12]  Petitioner did not file a direct appeal, nor has he filed a prior habeas motion under 28 U.S.C. § 2255.

Petitioner was represented by Tim Burdick in the underlying criminal proceedings.  The Court appointed the Federal Public Defender ("FPD") to represent Petitioner in his § 2255 proceedings on July 17, 2018.[13]  On July 17, 2019, the FPD filed a § 2255 motion on Petitioner's

---

[8] *Id.* ¶ 3.

[9] *Id.* ¶ 5.

[10] Doc. 29 ¶ 85.  *See* U.S.S.G. § 2K2.4(b).

[11] Doc. 34.  The criminal proceedings were reassigned to Judge Daniel D. Crabtree on February 21, 2020, after Judge Murguia resigned from the bench.  Doc. 43.

[12] Doc. 33.

[13] Standing Order 18-3.

behalf, setting forth a single ground for relief: the government violated the Sixth Amendment by intentionally and unjustifiably intruding into his attorney-client relationship.  Petitioner was released from custody on September 18, 2023.

> ### B.    The *Black* Investigation and Order

The Court assumes the reader is familiar with its ruling in *United States v. Carter* ("*Black* Order") that precipitates the § 2255 motion before the Court.  That comprehensive opinion was intended to provide a record for future consideration of the many anticipated motions filed pursuant to § 2255 and is incorporated by reference herein.  The Court does not restate the underlying facts and conclusions of law in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Petitioner seeks relief based on events documented in the *Black* case and investigation, which included audio recordings of telephone conversations and soundless video recordings of meetings between attorneys and their clients who were detained at CCA.  On August 13, 2019, the Court issued the *Black* Order, which addressed, *inter alia*, the governing standard for an intentional-intrusion Sixth Amendment claim in the Tenth Circuit.[14]  The Order discussed the elements required to prove a per se violation of the Sixth Amendment under the Tenth Circuit's decision in *Shillinger v. Haworth*,[15] which held that a per se Sixth Amendment violation occurs when: (1) there is a protected attorney-client communication; (2) the government purposefully intruded into the attorney-client relationship; (3) the government becomes "privy to" the attorney-client communication because of its intrusion; and (4) the intrusion was not justified by

---

[14] *Black* Order at 145–62.

[15] 70 F.3d 1132 (10th Cir. 1995).

any legitimate law enforcement interest.[16]  Once those elements are established, prejudice is presumed.[17]

The Court further held that a finding of purposeful intrusion into the attorney-client relationship necessarily requires a threshold showing that the recordings were protected attorney-client communications.[18]  While recognizing that the attorney-client privilege is not a right guaranteed by the Sixth Amendment, the Court applied principles relating to the privilege as a framework for this showing that the recordings between petitioners and counsel were protected communications under the Sixth Amendment.  With respect to the video recordings, the Court determined that the following threshold showings must be made after review and verification by the FPD: (1) the video of the attorney-client meeting exists; and (2) the quality of the non-verbal communication in the video is sufficient to confirm communication between the detainee and counsel.[19]  This threshold showing also requires an affidavit from defense counsel confirming that the nature and purpose of the meeting(s) were within the ambit of protected communication.[20]

### C.      Proceedings in Consolidated Master Case

The *Black* Order reassigned all *Black*-related § 2255 motions pending before other judges in the District to the undersigned for determination of the merits of petitioners' Sixth Amendment claims and for consolidated discovery.[21]  It was this Court's intent that by reassigning the habeas actions to the undersigned and consolidating the cases for discovery, the

---

[16] *Black* Order at 162 (citing *Shillinger*, 70 F.3d at 1142).

[17] *Id.*

[18] *Id.* at 163.

[19] *Id.*

[20] *Id.*

[21] *CCA Rec. Lit.*, Doc. 1.

process for seeing over 100 cases to completion would be streamlined for all parties.  Like the *Black* Order, the Court assumes the reader is familiar with the proceedings in the consolidated master case that precipitates the matter before the Court, and does not restate the underlying facts in detail but will provide excerpts from the record as needed to frame its discussion of the issues presently before it.

Relevant here, the government argued in response to many of petitioners' motions that the assertion of a per se Sixth Amendment violation under *Shillinger* was foreclosed by *Tollett v. Henderson*.[22]  In that case, the Supreme Court held that petitioners are barred from raising "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea."[23]  After the Court ordered supplemental briefing on the issue, multiple petitioners, including Mr. McCambry, argued that *Tollett* did not apply to their claims, that *Shillinger*'s presumption of prejudice satisfied *Tollett*, and that it did not matter whether the alleged Sixth Amendment violation occurred before or after a petitioner's guilty plea for purposes of the *Shillinger* analysis.[24]

On January 18, 2021, the Court rejected petitioners' arguments, concluding that the rule in *Tollett* procedurally barred petitioners who alleged pre-plea Sixth Amendment violations from advancing those claims.[25]  The Court held that each petitioner who claims a pre-plea Sixth Amendment violation is held to the applicable standard for showing his plea was involuntary,

---

[22] 411 U.S. 258 (1973).

[23] *Id.* at 267; *see CCA Rec. Lit.*, Doc. 588 at 55–56.

[24] *CCA Rec. Lit.*, Doc. 729 at 2–7, 12–19.

[25] *Id.*, Doc. 730 at 39.

and gave petitioners time to consider whether to seek leave to amend their motions to withdraw their pleas.[26]

Petitioners filed a motion to reconsider the Court's order, arguing, *inter alia*, that the Court should presume a Sixth Amendment violation occurred *both* pre- and post-plea, starting May 17, 2016.[27]  The Court rejected petitioners' argument, observing that "until their motion to clarify and reconsider, petitioners collectively took the same approach to their individual Sixth Amendment claims that did not address the timing issues that the government argues alter or end the course of certain categories of claims."[28]  The Court further rejected petitioners' attempts to "recast their continuing-violation theory as advancing 'dual allegations,'" describing it as "an attempted end-run around *Tollett* and its progeny and inconsistent with that rule and the authority cited by the Court."[29]

In order to "set petitioners on their way," however, the Court clarified that "[a]ny petitioner who has a good-faith basis to allege an individualized and specific post-plea violation must seek leave to amend his § 2255 motion."[30]  The Court stressed, however, that by giving petitioners additional time to seek leave to amend their motions, it neither predicted nor guaranteed the outcome of any such individual petitioner's request.[31]  Six petitioners, including Mr. McCambry, moved for leave to amend their motions to assert that they have a good-faith basis to claim a post-plea, pre-sentence Sixth Amendment violation.

---

[26] *Id.* at 40–41; *see Hill v. Lockhart*, 474 U.S. 52, 58–60 (1985) (adopting two-part test for ineffective assistance of counsel claim in the plea context: "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.").

[27] *Id.*, Doc. 756.

[28] *Id.*, Doc. 784 at 2.

[29] *Id.* at 11.

[30] *Id.*

[31] *Id.* at 19.

On December 10, 2021, the Court issued an order that concluded petitioners in the temporal category of claims who alleged Sixth Amendment violations that occurred post-plea or conviction but before sentencing could not rely on *Shillinger*'s per se rule.[32]  Instead, Petitioners in this temporal category must demonstrate prejudice, that is, "a realistic possibility of injury to [the defendant] or benefit to the [government]."[33]

### D.      Recordings in this Case

On August 13, 2019, this Court released the video recordings to the FPD as a result of the *Black* investigation.[34]  The FPD, along with defense counsel, reviewed two video recordings of Petitioner meeting with Burdick in person at CCA on March 15 and May 6, 2016.[35]

Pursuant to the Court's Order, Petitioner provided a privilege log detailing the claimed protected communication, verifying that during this meeting, Petitioner discussed matters "relat[ing] to legal advice or strategy" with Burdick.[36]  Petitioner also provided a sworn declaration from Burdick, stating that he reviewed the videos recording listed on the privilege log and confirmed, with respect to the recorded meeting and each other meeting with Petitioner at CCA: (1) the only reason he met with Petitioner "was to discuss matters related to legal advice or strategy; and (2) he had no knowledge nor did he believe that the meetings were recorded as they were attorney-client protected, that he did not consent to such, and that he was not aware such recordings would be dispensed to prosecutors.[37]

---

[32] *Id.*, Doc. 1034.

[33] *Id.*; *see Shillinger v. Haworth,* 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).

[34] *Black* Order at 165.

[35] *CCA Rec. Lit.*, Doc. 205-2 at 100.

[36] *Id.*

[37] *McCambry v. United States*, 19-2394-JAR-JPO, Doc. 4-1.

Petitioner was prosecuted by AUSAs Kim Flannigan and Terra Morehead, who deny that they viewed the recordings during the underlying case.[38]

The Court reviewed the video recording *in camera*. As set out in the privilege log, the Court confirms that the video recordings show Petitioner meeting with Burdick on two occasions for approximately 40 and 30 minutes, respectively, where they reviewed items a laptop.  In light of the analysis below, however, the details of the meetings visible in the videos are not pertinent and will not be discussed in this order.

## II.    Discussion

### A.    Motion for Leave to Amend

Petitioner's original § 2255 motion generally alleged that a Sixth Amendment violation occurred when the government intentionally obtained soundless video recordings.  Although his motion challenged his conviction, it did not specify when any alleged Sixth Amendment violation might have occurred.  The Court subsequently clarified that the date the government first obtained the recordings was May 17, 2016—before Petitioner plead guilty on May 31, 2016—and that it had possession of and access to the recordings until it disgorged the videos to the Court on August 9, 2016.[39]  In the wake of the Court's ruling that pre-plea claims are foreclosed under *Tollett*, Petitioner seeks leave to amend his claim to allege a more specific post-plea violation challenging only his sentence or term of supervised release.

Fed. R. Civ. P. 15(a)(2) governs a motion to amend a § 2255 motion if it is made before the one-year limitations period for filing a § 2255 petition has expired.[40]  Under Rule 15(a)(2), "a movant may file an amended § 2255 motion at any time during post-conviction proceedings with

---

[38] *Id.*, Docs. 3-1, 3-2.

[39] *CCA Rec. Lit.*, Docs. 756 at 6, 784 at 13.

[40] *United States v. Ohiri*, 133 F. App'x 555, 559 (10th Cir. 2005).

leave of court."[41]  An amendment only relates back to the original pleading, however, when "the amendment asserts a claim . . . that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading."[42]  Without a claim relating back, a motion under § 2255 must be brought within a year from "the date on which the judgment of conviction becomes final."[43]

For untimely § 2255 amendments made outside of the one-year window, a claim will only relate back if, "by way of additional facts, [the amendment] clarifies or amplifies a claim or theory in the original motion."[44]  However, if the "proposed amendment . . . seek[s] to add a new claim or to insert a new theory into the case," it does not relate back to the original motion.[45] "[T]he operative question for" relation-back "is whether 'the original and amended [motions] state claims that are tied to a common core of operative facts.'"[46]  "The answer to that question will often turn on whether the newly asserted claim would have had to be pleaded as a discrete claim under Section 2255 Rule 2(b) if it was set out in the original § 2255 motion."[47]

Here, Petitioner's motion for leave to amend was filed outside the one-year window. Thus, to relate back to his original § 2255 motion, the amendment must not "add a new claim or . . . insert a new theory into the case."[48]  The Court finds that it does not.  Petitioner's original § 2255 motion alleged the prosecution team became privy to his protected recordings at some

---

[41] *United States v. Roe*, 913 F.3d 1285, 1296 (10th Cir. 2019) (citing Fed. R. Civ. P. 15(a)(2)).

[42] Fed. R. Civ. P. 15(c)(1)(B).

[43] 28 U.S.C. § 2255(f)(1).

[44] *Roe*, 913 F.3d at 1296 (quoting *United States v. Espinoza-Saenz*, 235 F.3d 501, 505 (10th Cir. 2000)).

[45] *Id.*

[46] *Id.* at 1298 (alteration in original) (quoting *United States v. Trent*, 884 F.3d 985, 992–93 (10th Cir. 2018)).

[47] *Id.*

[48] *Id.* at 1296 (quoting *Espinoza-Saenz*, 235 F.3d at 505).

point during the course of his prosecution, specifically between May 16 and August 10, 2016.
His proposed amendment states that he is now electing to allege this event occurred between
June 1, 2016 and August 9, 2016, allegations that are similar in both time and type.  Thus,
because the proposed amendment serves to narrow the more generalized assertions he previously
made, it relates back to his original § 2255 motion.  Accordingly, the Court grants Petitioner's
motion for leave and will proceed to analyze his claim as asserting a post-plea, pre-sentence
Sixth Amendment violation.[49]

> ### B.     *Orduno-Ramirez*

As noted, the Court's December 10, 2021 Order concluded that petitioners in the
temporal category of claims who alleged Sixth Amendment violations that occurred post-plea but
before sentencing could not rely on *Shillinger*'s per se rule.[50]  Instead, the Court held that
Petitioners in this temporal category must demonstrate prejudice, that is, "a realistic possibility
of injury to [the defendant] or benefit to the [government]."[51]

The Tenth Circuit Court of Appeals affirmed this Court's decision in another § 2255
proceeding raising a similar Sixth Amendment violation claim involving video recordings.  In
*United States v. Orduno-Ramirez*, the Tenth Circuit declined to categorically extend a conclusive

---

[49] In *United States v. Spaeth*, the Tenth Circuit recently affirmed the Court's decision regarding preclusion of pre-plea Sixth Amendment claims, ruling: (1) the carve-out provision in the petitioner's unconditional standard plea agreement did not constitute a waiver of the government's right to raise, or create an exception to, the rule of law in *Tollett*, and because petitioner had not met his burden under *Tollett* to vacate his unconditional guilty plea, this Court did not err in ruling that *Tollett* bars his Sixth Amendment challenge; (2) the petitioner's reliance on the per se Sixth Amendment violation rule in *Shillinger* is misplaced because that case did not concern *Tollett*'s guilty-plea situation and has nothing to do with whether a guilty plea is voluntary or knowing; and (3) *Tollett* precludes the petitioner from challenging his sentence based on an alleged pre-plea Sixth Amendment violation. *See* 69 F.4th 1190, 1204–13 (10th Cir. 2023).  Because Petitioner relied on the per se prejudice rule in *Shillinger* and did not attempt to meet the applicable *Tollett* standard for showing that ineffective assistance of counsel caused him to enter his plea involuntarily and unknowingly, the decision in *Spaeth* would compel dismissal of his original pre-plea claim challenging his conviction as well as any challenge to his sentence based on that pre-plea violation.

[50] *CCA Rec. Lit.*, Doc. 1034.

[51] *Id.*; *see Shillinger v. Haworth*, 70 F.3d 1132, 1142 (10th Cir. 1995) (quoting *Weatherford v. Bursey*, 429 U.S. 545, 558 (1977)).

presumption of prejudice to post-plea or -conviction intrusions into attorney-client communications.[52]  After noting this Court held that the petitioner must show prejudice in such cases, the Tenth Circuit did "not decide which party bears the burden because the Government has shown that Mr. Orduno-Ramirez has not been prejudiced, and he does not contend otherwise."[53]  The court found that the government showed that the intrusion did not cause Mr. Orduno-Ramirez prejudice, and Orduno-Ramirez did not contend that he was prejudiced, relying instead on the presumption of prejudice in *Shillinger*.[54]  The court further found that the government showed that the lead prosecutor did not view the videos, the soundless video recordings provided no strategic value to the prosecution, and the record reveals no irregularity in the petitioner's sentencing proceedings.[55]

The Tenth Circuit also denied Orduno-Ramirez's request to order supplemental briefing on the burden of proof question.[56]  In a separate related case on appeal, however, the court recently agreed to address the issue of "[w]hether the district court erroneously required [Petitioner] to demonstrate prejudice to establish his Sixth Amendment claim."[57]

Although the question of whether the petitioner must show prejudice or whether the government must show lack of prejudice is an open question, the Court easily finds that Petitioner has not been prejudiced in this case.  While the December 10, 2021 Order held that Petitioner bears the burden to show prejudice resulting from the intentional intrusion into his attorney-client communications, the government introduced evidence and arguments showing

---

[52] 61 F.4th 1263, 1273–77 (10th Cir. 2023) (discussing *Shillinger*, 70 F.3d at 1142).

[53] *Id.* at 1276.

[54] *Id.* at 1277.

[55] *Id.*

[56] *Id.* at 1277 n.24.

[57] *United States v. Valdez*, No. 22-3025 (10th Cir. Sept. 12, 2023).

that he suffered no prejudice.  As was the case in *Orduno-Ramirez*, the government submitted an affidavit from the lead prosecutor, AUSA Flannigan, stating that at no time during her involvement in the case did she view any video recordings of Petitioner meeting with counsel at CCA.[58]

More critically, Petitioner entered into a binding Rule 11(c)(1)(C) plea agreement and was sentenced consistent with that agreement.  The government's discretion or capacity to prejudice Petitioner was curtailed by the specific terms of the plea agreement.  The government did not raise any objections to the PSIR or file any other motions regarding Petitioner's sentencing, and the 106-month sentence was well-within the Guideline range of  37 to 46 months' imprisonment on Count 2 and the 60-month mandatory, consecutive term on Count 1.  Thus, the only governmental conduct that had any effect on sentencing was its offer of a binding plea agreement that allowed Petitioner to avoid a 166-month sentence because the discharge of a firearm charge in Count 3 was dismissed.

The Court agrees that none of the information the Court, the United States Probation Office, or the government relied on for sentencing could have come from the March and May 2016 video recordings.  Even assuming the government bears the burden of proving lack of prejudice, it has met that burden because the record reveals no irregularity in or threat to the reliability or fairness of Petitioner's sentencing proceedings, where he received the sentence he bargained for in his Rule 11(c)(1)(C) plea agreement.  Because the government has shown the

---

[58] AUSA Morehead's reputation for lack of credibility in other cases in the consolidated matter is well documented, and the Court gives little weight to her affidavit in this case.

intrusion did not cause prejudice—and Petitioner does not contend that he was actually prejudiced—there is no Sixth Amendment violation and no ground for relief under § 2255.[59]

## III.    Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings states that the Court must issue or deny a certificate of appealability ["COA"] when it enters a final order adverse to the applicant.  "A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."[60]  To satisfy this standard, the movant must demonstrate that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."[61]  For the reasons stated above, the Court finds that Petitioner has not made this showing and, therefore, denies a certificate of appealability as to its ruling on his § 2255 motion.

**IT IS THEREFORE ORDERED BY THE COURT** that Petitioner Ashawntus McCambry's Motion for Leave to Amend (Doc. 877 in Case No. 19-2491) is **granted**;

**IT IS FURTHER ORDERED** that Petitioner's Motion to Vacate and Discharge with Prejudice under 28 U.S.C. 2255, as amended (Doc. 38), is **denied without an evidentiary hearing**.  Petitioner is also denied a certificate of appealability.

**IT IS SO ORDERED.**

Dated: <u>October 26, 2023</u>

 S/ Julie A. Robinson
JULIE A. ROBINSON
UNITED STATES DISTRICT JUDGE

---

[59] *Orduno-Ramirez*, 61 F.4th at 1266.  The Court does not reach the government's alternative argument that Petitioner's motion is subject to dismissal on untimeliness grounds.

[60] 28 U.S.C. § 2253(c)(2).

[61]*Saiz v. Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v. Dretke,* 542 U.S. 274, 282 (2004)).